IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT WILLIAMS,<br>　　　　　Plaintiff,<br><br>　　　vs.<br><br>OWENS ILLINOIS, INC. and OWENS<br>BROCKWAY GLASS CONTAINER, INC.,<br>　　　　　Defendants. | Civil Action No. 13-1365<br>Judge Hornak/<br>Magistrate Judge Mitchell |

REPORT AND RECOMMENDATION

I.　　Recommendation

It is respectfully recommended that the motion for summary judgment filed on behalf of the defendants (ECF No. 21) be denied.

II.　　Report

Plaintiff, Scott Williams, brings this toxic tort, personal injury action against Defendants, Owens-Illinois, Inc. and its wholly-owned subsidiary, Owens Brockway Glass Container, Inc., (OBGC), alleging that he was injured when he was exposed to monobutyltin trichloride ("MBTC") while he was working at OBGC's glass bottle facility in Toano, Virginia during the period January to February 2009. He raises claims of negligence and premises liability.

Presently pending before the Court is a motion for summary judgment, filed by the Defendants. They contend that Plaintiff is collaterally estopped from raising his claims in this case because he raised and lost the same claims in a workers' compensation claim against his employer, E.W. Bowman. For the reasons that follow, Defendants' motion should be denied.

　　Facts

MBTC is an organotin compound. (WC Decision Finding of Fact #1.)[1] Plaintiff alleges that, while he was working for E.W. Bowman in January and February 2009 performing lehr

---

[1] Defs.' App. B (ECF No. 24).

furnace repair and maintenance at OBGC's glass bottling plant in Toano, Virginia, he was exposed to MBTC through inhalation and dermal absorption, which caused him to develop neurogenic bladder, gastritis, pancreatitis and dermatitis. (Am. Compl. ¶¶ 5, 8, 12, 19.)[2]

Plaintiff filed a workers' compensation ("WC") claim against his employer arising out of the alleged MBTC exposure. He also filed another claim that he sustained a cervical injury during the course of his employment on February 12, 2009 and the two claims were consolidated for purposes of hearing and disposition. (WC Decision Findings of Fact #3, 5; D. Williams Decl. ¶ 4.[3]) He presented both lay and expert testimony and evidence seeking to establish that he was exposed to MBTC and that the exposure had caused him injury. (WC Decision Findings of Fact #6, 7, 9, 10, 11, 13.)

In a decision rendered on November 30, 2011, Workers' Compensation Judge Anne Coholan ("WCJ Coholan") concluded that Plaintiff "has failed to establish that he had toxic chemical exposure while he worked at the Toano, Virginia plant in January and February, 2009. I further find that [he] has failed to establish that he has sustained any injuries due to any chemical exposure he may have had at the Toano, Virginia plant in January and February, 2009." (WC Decision Finding of Fact #13; see also WC Decision Conclusion of Law #3.) Specifically, WCJ Coholan found that:

> the claimant has not been able to personally identify any specific chemicals or substances to which he was exposed at the Toano, Virginia plant in January or February, 2009. In addition, even though the claimant and [field service representative Robert] Holmes have verified that there were some discussions that suggested that [MBTC] may have been present at the plant, neither the claimant nor Mr. Holmes were able to verify whether that was true or not. In addition, all of the testimony that the claimant and Mr. Holmes have provided about the possible presence of [MBTC] at the plant has been based on hearsay statements.

---

[2] ECF No. 15.
[3] ECF No. 26 Ex. A.

> Furthermore, even though the claimant is relying upon the opinions of Dr. Alan Ducatman concerning his toxic exposure claim, Dr. Ducatman has not been able to confirm that the claimant had organotin exposure at the Toano, Virginia plant. In addition, even though Dr. Ducatman has indicated that the claimant provided him with history information indicating that the claimant thought he had chemical exposure, the claimant has not demonstrated himself to be a particularly reliable historian in this matter with respect to dates or details. As such, I find that any history information the claimant may have provided to Dr. Ducatman about possible chemical exposures that he had, may not have been accurate. Furthermore, even though Dr. Ducatman has made reference to hair tests and testing that was performed upon the claimant's clothing, for purposes of concluding that the claimant had had some chemical exposure at the Toano, Virginia plant, I find that Dr. Ducatman's opinions, based upon such tests results, are not credible or convincing because it is not clear when the hair testing or clothing testing was performed. Also, there is no indication in the record as to how the hair samples or clothing samples were obtained or how they were preserved prior to the testing. In addition, there is no clear evidence of record that establishes who performed the testing or how the testing was performed. Also, it is not clear from Dr. Ducatman's testimony whether he actually reviewed the results from the testing itself, or if he relied upon what the claimant told him about the test results. As such, there are too many unknown variables pertaining to the hair testing and clothing testing for Dr. Ducatman to have credibly relied upon those test results for purposes of concluding that the claimant had chemical exposure at the Toano, Virginia plant.
>
> Also, quite significantly, Dr. Donald McGraw, who prepared an extremely thorough 25-page report in this matter, has concluded that the claimant did not sustain any type of clinical condition as a result of a toxic workplace exposure. Accordingly, Dr. McGraw's opinions are not helpful to the claimant in sustaining his burden of proof….
>
> Also, of significance, Dr. Ducatman has couched some of the ultimate opinions he rendered in this matter, in equivocal terms. For example, when Dr. Ducatman discussed the claimant's complaints of sleep deprivation, weight loss, and depression, which he thought were some of the claimant's more disabling conditions, Dr. Ducatman said, "It is possible that they are due directly to exposure. However, I cannot assert a 'more likely than not' direct physiologic relationship between exposure and symptomatic complaints based on my own findings, nor can I 'rule out' such a direct toxic relationship." Such equivocal statements are not helpful to the claimant in meeting his burden of proof.

Id.

The order denied and dismissed Plaintiff's toxic exposure claim petition. (WC Decision at 20.) On the other hand, WCJ Coholan found that Plaintiff had "successfully established that

3

he sustained a cervical injury during the course of his employment with E.W. Bowman, Inc. at the Toano, Virginia plant on January 28, 2009.  Specifically, the claimant has established that[] he sustained a work-related neck injury in the nature of an aggravation of his pre-existing degenerative condition at C5-C6 and C6-C7."  (WC Decision Conclusion of Law #4.)

Plaintiff filed an appeal with the Workers' Compensation Appeal Board.  (ECF No. 28 App. D.)  However, he and E.W. Bowman then entered into settlement discussions.

On September 6, 2012, a hearing was held before Workers' Compensation Judge William Lowman, at which Plaintiff and E.W. Bowman presented a Compromise and Release Agreement ("CRA").  The CRA provided that E.W. Bowman would pay Plaintiff the lump sum of $500.00 for his alleged toxic exposure injury of February 12, 2009, but no other amount, medical bills or liens.  In exchange, Plaintiff agreed to release E.W. Bowman as to any and all indemnity, specific loss and medical benefits to which he was, is, or might be entitled under the Workers' Compensation Act in connection with his alleged toxic tort injury.  The CRA stated that the issue presented was whether WCJ Coholan had erred in denying Plaintiff's petition based on this injury and that: "The parties are entering into this Agreement as it is viewed as being mutually favorable and in order to avoid the time and expense associated with continued litigation."  On September 7, 2012, WCJ Lowman approved the CRA.  (ECF No. 24 App. C.)

Procedural History

On September 17, 2013, Defendants removed this case from the Court of Common Pleas of Allegheny County where it had been filed on August 26, 2013 (ECF No. 1).  The Complaint was filed on behalf of Scott Williams, Barbara Crossland and Isaac Williams and only Owens-Illinois, Inc. was named as a defendant.  The removal was made on the basis of diversity jurisdiction in that the three named plaintiffs are Pennsylvania citizens, Owens-Illinois is a

4

Delaware corporation with its principal place of business in Ohio and the amount in controversy exceeds $75,000, exclusive of interest and costs. (ECF No. 1 ¶¶ 14-18.) On October 3, 2013, Plaintiff stipulated to the dismissal of Barbara Crossland and Isaac Williams as plaintiffs (ECF No. 5).

On December 6, 2013, Plaintiff filed an Amended Complaint (ECF No. 15), which added OBGC (also a Delaware corporation with its principal place of business in Ohio) as a defendant. Count I alleges a claim of negligence and premises liability against both Defendants. Count II alleges a claim of negligence against Owens-Illinois based on its assumption of responsibility for industrial hygiene practices, procedures and conditions at the plant.

On January 29, 2014, Defendants filed a motion for summary judgment (ECF No. 21). Plaintiff filed his brief in opposition on March 3, 2014 (ECF No. 27). On March 17, 2014, Defendants filed a reply brief (ECF No. 28).

Standard of Review

As amended effective December 1, 2010, the Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter

of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

Determining State Law

When federal courts exercise diversity jurisdiction, they "are to apply state substantive law and federal procedural law." Hanna v. Plumer, 380 U.S. 460, 465 (1965). The parties agree that Pennsylvania law applies to this dispute.

"The Full Faith and Credit Act, 28 U.S.C. § 1738 … requires the federal court to give the same preclusive effect to a state-court judgment as another court of the State would give." Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005) (citation omitted). Under Pennsylvania law, "collateral estoppel principles apply to judgments from [workers'] compensation boards in subsequent common law tort actions." McCullough v. Xerox Corp., 581 A.2d 961, 964 (Pa. Super. 1990), appeal denied, 592 A.2d 45 (Pa. 1991). See also Capobianchi v. BIC Corp., 666 A.2d 344 (Pa. Super. 1995) (finding of no work-related injury had preclusive effect in subsequent products liability action), appeal denied, 674 A.2d 1065 (Pa. 1996); Grant v. GAF Corp., 608 A.2d 1047 (Pa. Super. 1992), aff'd mem., 639 A.2d 1170 (Pa. 1994) (same). See Jones v. United Parcel Serv., 214 F.3d 402, 406 (3d Cir. 2000) (predicting that Pa. Supreme Court would hold that, when workers' compensation proceeding found that employee had fully recovered from his back injury, employee was precluded from asserting a claim under the ADA).

The Court of Appeals has observed that:

> Under Pennsylvania law, the following conditions must be satisfied for collateral estoppel to bar a subsequent claim: (1) the issue decided in the prior case must be identical to the one presented in the later case; (2) there was a final judgment on the merits in the prior action; (3) "[t]he party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action"; and (4) "[t]he party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action."

<u>Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.</u>, 571 F.3d 299, 310 (3d Cir. 2009) (quoting <u>Rue v. K-Mart Corp.</u>, 713 A.2d 82, 84 (Pa. 1998)).  The court noted that "Pennsylvania courts will occasionally frame the test as a five-factor test, adding the requirement that the determination in the prior proceeding was essential to the judgment." <u>Id.</u> n.12 (citation omitted).

Defendants argue that all of the factors apply here: 1) the issue (whether Plaintiff was injured by exposure to MBTC during the course of his employment while employed by E.W. Bowman at OBGC's Toano, Virginia plant in January and February 2009) is identical; 2) there was a final judgment on the merits when WCJ Coholan determined that his injury was not related to MBTC exposure and dismissed and denied his toxic exposure claim; 3) Plaintiff was a party to the WC action; and 4) he had a full and fair opportunity to litigate this issue when he presented his own testimony and that of a co-worker and he submitted expert reports and testimony from Dr. Alan Ducatman in support of causation.

Plaintiff responds that: 1) the order denying his WC toxic exposure claim was superseded by the order approving the CRA and there is no "pending" appeal, so Defendant's citations are inapposite; 2) he did not have a full and fair opportunity to litigate his claim because the amount in controversy was not comparable and because Owens-Illinois prevented him from having necessary access to proof; and 3) the policy behind collateral estoppel does not favor its application in this case.

Defendants cite cases holding that a decision remains in effect until it is reversed on appeal. Application of Pa. Turnpike Comm'n, 715 A.2d 1219, 1223 n.9 (Pa. Commw. 1998); Philadelphia Fraternal Order of Correctional Officers v. Rendell, 701 A.2d 600, 607 (Pa. Commw. 1997), aff'd, 736 A.2d 573 (Pa. 1999). These cases are inapposite. The decision upon which Defendants rely has been superseded and cannot have collateral estoppel effect. Thus, there was no "final judgment on the merits." The order approving the CRA cannot be reconciled with the order dismissing the toxic exposure claim. Moreover, it is noted that WCJ Lowman's decision approving the CRA itself states that it "is final unless an appeal is taken to the Workers' Compensation Appeal Board as provided by law." (ECF No. 24 App. C at 1.)

In addition, the Pennsylvania Supreme Court has held that whether a claimant had a "full and fair opportunity to litigate" an issue in a prior proceeding depends upon the amount at risk financially and the type of procedural rules governing each proceeding. Cohen v. W.C.A.B. (City of Philadelphia), 909 A.2d 1261, 1270 (Pa. 2006). Unlike common-law tort actions, WC claims compensate claimants only for their lost wages as a result of workplace injuries. 77 P.S. § 511. Plaintiff notes that he was entitled to receive compensation if either of his two claims was granted and in fact the claim for the neck workplace injury was granted. Thus, he had little incentive to vigorously oppose the employer on a claim with no monetary value. See Department of Corrections v. W.C.A.B. (Wagner-Stover), 6 A.3d 603, 616 (Pa. Commw. 2010). In this case, by contrast, Plaintiff seeks lost wages, the cost of medical treatment and damages for pain, suffering and mental anguish. Indeed, Plaintiff notes that, if the amount in controversy did not exceed $75,000.00, this Court would not even have subject matter jurisdiction over the case. Thus, it cannot be said that the amount in controversy in this case is any way comparable to that at issue in the WC proceeding.

Finally, Plaintiff argues that Owens-Illinois prevented him having necessary access to proof by refusing to respond to his subpoena seeking to discover whether MBTC was present at the plant. Therefore, it would pervert the policies behind collateral estoppel to now permit Owens-Illinois to obtain a dismissal before being required to produce this very information.

Plaintiff has submitted the declaration of Douglas Williams, who served as his counsel in the WC proceeding. Attorney Williams states that he served a subpoena upon Owens-Illinois, which directed Owens-Illinois to state whether Certincoat (a product containing MBTC) was used at the Toano, Virginia plant, but he never obtained a response. He therefore had to rely upon expert testimony. (D. Williams Decl. ¶¶ 5-7.)[4] He also notes that WCJ Coholan granted Plaintiff's claim based upon the cervical injury and denied the claim based on toxic exposure and he indicates that, had WCJ Coholan granted the toxic exposure claim, it would not have changed the benefits that Plaintiff was awarded. (D. Williams Decl. ¶¶ 8-9.)[5] He also indicates that the settlement was contemporaneous with the settlement of a separate claim Plaintiff had against his employer arising out of a motor vehicle accident and that, although separate CRAs were signed, they were resolved together. (D. Williams Decl. ¶ 10.)

Defendants argue that Plaintiff obtained the information from other sources, specifically the deposition of Robert Holmes which WCJ Coholan personally attended. (WC Decision Finding of Fact #8.) However, as cited above, WCJ Coholan concluded that Mr. Holmes was not

---

[4] Defendants "deny" this statement, contending that Plaintiff has proffered no evidence that Owens Illinois was served at the proper time, place and manner (ECF No. 29 ¶ 16), but cite no evidence in support of this denial. Attorney Williams can testify based on his personal knowledge that he served the subpoena and that no response was filed, and it is a "reasonable inference" from his statement that he served the subpoena properly. Moreover, even if the evidence in this case presented a disputed issue of fact, the dispute would be resolved in Plaintiff's favor as the non-moving party for purposes of the motion for summary judgment.
[5] Defendants "deny" this statement (ECF No. 29 ¶ 14), but cite no evidence in support of the denial.

9

able to verify whether MBTC was actually present at the plant. (WC Decision Finding of Fact #13.) Thus, Defendants' implication that Mr. Holmes' testimony that there may have been MBTC at the plant was the equivalent of Owens Illinois' hypothetical admission in response to the subpoena that MBTC was actually present at the plant is rejected.

Defendants also contend that, if Plaintiff was truly aggrieved by the fact that he did not receive a response to the subpoena, he had the right to raise the issue with WCJ Coholan or on appeal. Nevertheless, as Plaintiff notes, to the extent that the subpoena was unenforceable because it was issued from the Pennsylvania workers' compensation system, which had no jurisdiction over a company in Virginia, this fact argues against applying collateral estoppel. The inability to enforce the subpoena in the WC proceeding only serves to highlight the "differences in the quality or extensiveness of the procedures followed in the two courts." Rue v. K-Mart Corp., 691 A.2d 498, 504 (Pa. Super. 1997), aff'd, 713 A.2d 82 (Pa. 1998).

The principal policy behind issue preclusion is that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." Rue, 691A.2d at 500 (citation omitted). In this case, however, Plaintiff points out that he was not a "losing litigant." Rather, he successfully settled the toxic exposure claim without it being subject to subrogation rights, and therefore the overall result was more in his favor than if WCJ Coholan had granted the claim. Moreover, he argues that, to the extent that he lost the claim before WCJ Coholan, it was because he lacked the full and fair opportunity to litigate the relevant issues. The Court concludes that the application of collateral estoppel in this situation would be manifestly inappropriate.

For these reasons, it is recommended that the motion for summary judgment filed on behalf of the defendants (ECF No. 21) be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by April 2, 2014  Any party opposing the objections shall file a response by April 16, 2014.  Failure to file timely objections will waive the right of appeal.

s/Robert C. Mitchell_____<br>
ROBERT C. MITCHELL<br>
United States Magistrate Judge

Dated:  March 19, 2014